UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIANE RODRIGUES
DOS SANTOS ARGUETA,

          Petitioner,

                                  Civil Case No. 22-12840
v.                                  Honorable Linda V. Parker

OMAR ARGUETA-UGALDE,

          Respondent.
_____/

## ORDER GRANTING IN PART PETITIONER'S MOTION FOR ATTORNEYS' FEES AND COSTS (ECF NO. 34)

On February 2, 2023, the Court issued an Opinion and Order granting the Petition to have minor child, M.A., returned to Brazil pursuant to the Hague Convention and its implementing statutes, the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001 *et seq*. The matter is presently before the Court on Petitioner's Motion for Attorneys' Fees and Costs. (ECF No. 34.) Respondent filed a Response. (ECF No. 36.) For the reasons that follow, the Court is granting in part Petitioner's motion.

ICARA, pursuant to 22 U.S.C. § 9007(b)(3),[1] provides the following:

> Any court ordering the return of a child pursuant to an action brought under section 9003 of this title shall order

---
[1] Formerly cited as 42 U.S.C. 11607(b)(3).

> the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

When awarding attorneys' fees, the Sixth Circuit is clear that "[t]he primary concern in an attorney fee case is that the fee awarded be reasonable," which means that the award must be "adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (quoting *Reed v. Rhodes*, 179 F.3d 453, 469, 471 (6th Cir. 1999)).  The reasonableness of the fees requested is assessed using the "lodestar method," whereby the court multiplies "the number of hours reasonably expended on the case by a reasonable hourly rate." *See Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The lodestar amount is presumed to be reasonable. *City of Riverside v. Rivera*, 477 U.S. 561, 568 (1986).  The court may reduce the award "[w]here the documentation of hours is inadequate[.]" *Hensley*, 461 U.S. at 433.  The Supreme Court has instructed district courts to also exclude fees not "reasonably expended," such as "hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 434.  A court also has the discretion to adjust that amount based on "relevant considerations peculiar to the subject litigation." *Adcock-Ladd*, 227 F.3d at 349.

## REASONABLE HOURLY RATE

Petitioner seeks an hourly rate of $500 per hour for her counsel, Robert Anthony Alvarez and Amy Grauman, and $150 per hour for three paralegals who provided litigation support. "To determine a reasonable hourly rate, courts use as a guideline the prevailing market rate, which is defined as 'the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record.'" *Northeast Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686, 715 (6th Cir. 2016) (citing *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)). In support of the proposed hourly rate, Petitioner attaches declarations from Alvarez and Grauman. (ECF Nos. 34-1, 34-2.) Alvarez notes that the Western District of Michigan previously approved him for $350 per hour in an employment matter, acknowledging that "the reasonableness of the lodestar calculation was not addressed by the court." (Alvarez Decl., ECF No. 34-1 ¶ 9, Pg ID 967.) However, Grauman makes no such assertion of any prior approvals. (*See* Grauman Decl., ECF No. 34-2.) In his Response, Respondent attaches the State Bar of Michigan 2020 Economics of Law Practice Attorney Income and Billing Rate Summary Report ("2020 State Bar Report"). (Ex. A., ECF No. 36-1.) The Court will use the 2020 State Bar Report to analyze attorneys' fees for Alvarez and Grauman because it better reflects the rates of general attorneys. *See Northeast Ohio Coalition for the Homeless*, 831 F.3d at 716 ("A

3

district court may look to 'a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests.'").

The 2020 State Bar Report lists the applicable rates as follows: Alvarez (partner) $330–349 median/mean; Grauman (partner) $330–349 median/mean. Alvarez has practiced for approximately 19 years, *see* ECF No. 34-1 ¶ 4, Pg ID 967, which would place him at a $300–315 per hour median/mean billing rate, with a $367 per hour rate in the 75th percentile. (Ex. A., ECF No. 36-1 at Pg ID 1126.) Grauman has practiced for approximately 11 years, *see* ECF No. 34-2 ¶ 4, Pg ID 970, which would place her at $280–297 median/mean with a $350 per hour rate in the 75th percentile. (Ex. A., ECF No. 36-1 at Pg ID 1126.) The median/mean billing rate for counsel who practice in Wayne County, which is the venue of this Court, is $295–320 per hour median/mean with a $375 per hour rate in the 75th percentile. (*Id.* at 1131.) Alvarez' practice focuses on "representing immigrants and foreign citizens in complex federal litigation," ECF No. 34-1 ¶ 8, Pg ID 967, which also includes some experience with international custody and the Hague Convention. Grauman's practice focuses on family law according to the law firm's website, ECF No. 36-1 at Pg ID 1139, with some experience in international custody and Hague Convention matters. Based on these descriptions, both Mr. Alvarez' and Ms. Grauman's practice areas would be considered "Other Civil

4

Law" under the 2020 State Bar Report, which would place them at $265–285 per hour median/mean pay rate with a $350 per hour rate in the 75th percentile. (ECF No. 36-1 at Pg ID 1129.)

Petitioner also seeks fees for work conducted by three paralegals at a rate of $150 per hour. However, Petitioner fails to provide the Court with any information regarding the qualifications of the paralegals. Courts in this district have approved billing rates for paralegals anywhere from $125–140 per hour. *See Aljahmi v. Ability Recovery Servs., LLC*, No. 2:17-CV-13772-TGB-DRG, 2022 WL 891416, at *2 (E.D. Mich. Mar. 25, 2022); *see also Tikan v. Asset Acceptance, LLC*, No. 13-12173, 2016 WL 1212641, at *3 (E.D. Mich. Feb. 12, 2016) (collecting cases).

Based on the aforementioned prevailing market rates and case law, the Court finds that Petitioner's counsels' hourly rates, along with the paralegals to be unreasonable. Alvarez' experience, years of practice, and success on the present matter leads this Court to find that a reasonable award for him is in line with the Western District's ruling of $350 per hour. Further, a reasonable award for Grauman's experience, years of practice, and success on this present matter is $325 per hour. Finally, a reasonable amount for the work of the paralegals, which is also in line with this District, and based on the detailed time entries, would be $135 per hour.

## HOURS REQUESTED

Respondent seeks a reduction of hours because "a team of multiple attorneys and paralegals," in some instances, billed for "the same or comparable activities." (ECF No. 36 at Pg ID 1115.) According to the Sixth Circuit, "[m]ultiple-lawyer litigation is common and not inherently unreasonable." *Northeast Ohio Coalition for the Homeless*, 831 F.3d at 704 (citations omitted). The Sixth Circuit has also stated, however, that while "multiple representation can be productive . . . there is also the danger of duplication, a waste of resources which is difficult to measure." *Id.* (quoting *Coulter v. State of Tenn.*, 805 F.2d 146, 152 (6th Cir. 1986)). Where duplicative efforts are not reasonable, the court may make across-the-board reductions of the hours billed. *Coulter*, 805 F.2d at 152.

Respondent identifies multiple entries where the billing records of the Petitioner's counsel reflect potentially inaccurate or duplicative efforts. As to Alvarez, Respondent notes the following: (i) Alvarez billed for approximately 31 hours of attending trial,[2] although the three-day hearings lasted no longer than 8 hours, which only amount to at most 24 hours of billable time; (ii) "numerous conversations with a Brazilian attorney on Brazilian custody issues – including filing for divorce in Brazil-spanning 17.3 hours" (ECF No. 36 at Pg ID 1116); and

---

[2] Parties incorrectly refer to the evidentiary hearing held by the Court as a "trial."

6

(iii) "drafting an *ex parte* motion that was later withdrawn,"[3] amounting to 6.2 hours. (*Id.*) However, Respondent's account of the time Alvarez reported for the hearing attendance entries is disingenuous. Under each entry for Alvarez, he not only lists "Trial" but he also goes into details about a plethora of other tasks that he undertook, including but not limited to, conversations with Petitioner, reviewing the transcripts, preparations for the next day of testimony, and conversations with potential witnesses, etc. (ECF No. 34-3 at Pg ID 976.) Although these entries should have been separated out for a good and more accurate timekeeping record, the Court does not find any of the three entries to be unreasonable. Further, as this case involved a review and analysis of Brazilian law, the Court does not find Alvarez' entries regarding communications between himself and the Brazilian attorney to be unreasonable.

---

[3] Respondent fails to provide any case law to support this argument. However, the withdrawal of a motion does not nullify the time, effort, and resources expended in drafting the document and supporting brief. (*See* ECF Nos. 6, 6-1.) A prevailing party should be compensated for their work. *See Cleveland v. Ibrahim*, 121 F. App'x 88, 90 (6th Cir. 2005) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) ("In light of the congressional intent behind these fee-shifting provisions, the Supreme Court has held that a prevailing plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.' "). The instant motion requested the Court to expedite proceedings which involved a minor child's return to one of her parents across international waters; although it was later withdrawn, the motion was reasonable and justified. *Cf. Jadwin v. County of Kern*, 767 F.Supp.2d 1069 (E.D. Cal. 2011) (disallowing hours billed for a withdrawn motion for reconsideration to factor into an attorneys' fee award when the court found them to be "unreasonable and unjustified").

Regarding Ms. Grauman, Respondent "objects" to any time she spent at the hearing because the time records do not reflect "what, if any, services" that she provided during the hearing. (ECF No. 36 at Pg ID 1116.) However, this argument is unavailing. An attorney's billing records must "describe the work performed *in sufficient detail* to establish that the work is reasonably related to the litigation." *Gratz v. Bollinger*, 353 F. Supp. 2d 929, 939 (E.D. Mich. 2005) (emphasis in original and brackets removed) (quoting *In re Samuel R. Pierce*, 190 F.3d 586, 593–94 (D.C. Cir. 1999)). Grauman's entries of "Attended trial (co-counsel)" is sufficient to describe that her work was related to the hearing. (ECF No. 34-3 at Pg ID 978.) It is common that the role of co-counsel during a hearing is to take notes and to provide feedback and support to their fellow co-counsel. Ms. Graumen's lack of detail as to exactly what she did at every moment of the hearing does not make her entry unreasonable.

As to the three paralegals, Respondent "objects" to them being allowed to bill any time at the hearing, asserting that their role was "duplicative and/or *de minimus*." (ECF No. 36 at PG ID 1117.) Specifically, Respondent notes that two of the paralegals—Lisabeth Mazariegos and Kelton Rodriguez—were responsible for managing exhibits, while Mr. Rodriguez was tasked with tracking exhibits and objections. Further, Respondent states that the third paralegal—Claudia Gonzales Castaneda—was responsible for "real time trial transcription," which Respondent

8

notes "is a luxury far beyond what is reasonably necessary for competent representation at trial." (*Id.*)

First, the Court is disturbed by Respondent's counsel's use of the phrase "de minimus" to describe the hard work of Petitioner's paralegals at the hearing. Many courts, including the Supreme Court, recognize the importance and skill of paralegals in the litigation process. *See, e.g.*, *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 578 (2008) ("Surely paralegals are more analogous to attorneys, experts, and agents"); *see also, e.g.*, *Imwalle v. Reliance Med. Prod., Inc.*, 515 F.3d 531, 552 (6th Cir. 2008) ("But even the most experienced litigators might reasonably require the assistance of a paralegal in a case that involved . . . hundreds of exhibits"); *In re Caise*, 359 B.R. 152, 154 (Bankr. E.D. Ky. 2006) ("utilization of . . . paralegals enables attorneys to provide important services to their clients in a more efficient, and therefore more affordable, manner."). This was a complex and fact-intensive case which, by Petitioner's account, needed to be resolved rapidly. It also included hundreds of exhibits, three lengthy days of hearing testimony, and a plethora of objections. The Court is satisfied that the work of Petitioner's paralegals at the hearing— "Real Time Trasncription [sic] of Trail" [sic], ECF No. 34-4 at Pg ID 978, providing "Litigation Support re tracking of exhibits, admission of exhibits and objections," *see id.* at 977, and "Litigation support re locating and queuing [sic] exhibits"—was anything but "de minimus":

9

their work assisted Alvarez and Grauman in obtaining a favorable ruling for Petitioner and the ultimate return of her child to Brazil. As such, the Court finds that all time billed in this case was reasonable.

## ADJUSTMENT OF LODESTAR AMOUNT

Upon determining the lodestar amount, in its discretion, the Court may adjust the award upward or downward to reflect a reasonable award. "This lodestar figure may then be increased or decreased based on a variety of factors, such as skill and time required, novelty of the questions involved, fixed or contingent fee basis, results obtained, and/or relationship between attorney and client." *Veteran Med. Prod., Inc. v. Bionix Dev. Corp.*, No. 1:05-CV-655, 2010 WL 989804, at *3 (W.D. Mich. Mar. 16, 2010) (citing *Maxwell v. Angel-Etts of Cal.*, 53 F. App'x 561, 568 (Fed. Cir. Dec. 13, 2002)).

Having reviewed the billing records submitted by Petitioner's counsel, the Court finds that an adjustment of the lodestar figure is required and is as follows:

- Attorneys' fees for Alvarez for 107.5 hours at $350 per hour for a total of $37,625;

- Attorneys' fees for Grauman for 36.2 hours at $325 per hour for a total of $11,765;

- Paralegal fees for 92.1 hours at $135 per hour for a total of $12,433.50

Thus, Petitioner is entitled to an award of $61,823.50 in attorneys' fees.

## COSTS & EXPENSES

Finally, Petitioner requests $871.50 in costs. (ECF No. 34-4 at Pg ID 981.)

After reviewing the billing records, the Court finds that these costs are reasonable.

## CONCLUSION

Accordingly,

**IT IS ORDERED** that Petitioner's request for attorneys' fees and costs is **GRANTED IN PART**.

s/ Linda V. Parker<br>
LINDA V. PARKER<br>
U.S. DISTRICT JUDGE

Dated: June 27, 2023